IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DAVID N DAVID,<br><br>        Petitioner,<br><br>vs.<br><br>JOHN CONANT,[1]<br><br>        Respondent. | No. 3:17-cv-00062-JKS<br><br>ORDER<br>[Re: Motion to Stay at Docket No. 11-1] |

      David N David, a state prisoner now represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. David is in the custody of the Alaska Department of Corrections and incarcerated at Goose Creek Correctional Center. After this Court, through a previously-assigned judge, appointed counsel for David, counsel filed an Amended Petition ("Petition"). Docket No. 16. David concurrently moved to stay these proceedings and hold them in abeyance while he pursues post-conviction relief in state court. Docket No. 11-1. Respondent has answered the Petition, Docket No. 17, and has opposed the motion to stay, Docket No. 14. The motion to stay is now before the undersigned judge and ripe for adjudication.

---

[1]     Earl Houser is substituted for John Conant as Superintendent of Goose Creek Correctional Center. FED. R. CIV. P. 25(d).

-1-

# I. BACKGROUND/PRIOR PROCEEDINGS

On June 14, 2001, David was charged with one count of sexual assault in the first degree and one count of sexual assault in the fourth degree in an indictment that alleged David had engaged in non-consensual sexual penetration of the victim D.H. David pled not guilty and proceeded to a jury trial, which began on October 30, 2001. The jury was unable to reach a verdict, and the trial court declared a mistrial. On June 25, 2002, the State retried the case in a second jury trial. On direct appeal of his conviction, the Alaska Court of Appeals laid out the following facts underlying the charges against David and the evidence presented at trial:

> Sometime after midnight, D.H. was dropped off at home by a taxi. She lived at the Swanson apartments in Bethel. However, D.H. was locked out and was unable to get anyone to let her into her apartment. She began walking back to Hospital Housing, where she had been earlier that night.
> At some point a young Alaska Native man approached D.H. from the opposite direction. The man was wearing glasses, a black baseball hat, and a black jacket with white stripes down the sleeves. The man claimed to know D.H., and her boyfriend Paul Chief, and he asked D.H. to go with him to a party on Alder Street. D.H. did not recognize the man. After initially agreeing to accompany him, she quickly changed her mind.
> D.H. turned to walk away, but the man grabbed her from behind and pulled her behind a nearby hardware store. D.H. fought against the man, but he hit her in the jaw. He then pinned her down, removed her pants, and penetrated her vagina with his fingers. D.H. testified that this attack continued for "a long time."
> At some point a woman, Margene Egoak, happened by. Egoak saw a man kneeling over D.H. with his hand covering her mouth. Egoak described this man as young and Native. When Egoak approached to check on D.H., the man ran away. Egoak then helped D.H. put on her pants and shoes, and later helped her flag down a police officer. While assisting D.H., Egoak found a black "Raiders" baseball cap near the site of the attack. She gave this hat to the police.
> Bethel Police Sergeant Terry Stonecipher interviewed D.H. in the hospital. Based on the description provided by D.H. and Egoak, Sergeant Stonecipher suspected that the assailant was David. This suspicion was based on the fact that Sergeant Stonecipher believed that David lived on Alder Street and the fact that David had been dressed in black pants, coat, and hat during all of Stonecipher's previous contacts with him. Immediately after speaking with D.H., Sergeant Stonecipher went to the crime scene and recovered a CD case and condom packages which were on the ground. Sergeant Stonecipher attempted to contact David at the Alder Street address, but he had recently moved out.
> In the days after the assault, D.H.'s boyfriend, Paul Chief, pointed out different men to D.H. and asked whether any of them was her assailant. Some time after the assault, Chief and D.H. saw a man across the street. Chief asked D.H. if this man was her assailant. At first D.H. said she didn't know, but after getting a better look, she said he "looks like the guy."
> D.H. then called Sergeant Stonecipher and told him that she had identified the man who had assaulted her and his name was David David. Sergeant Stonecipher

-2-

> prepared a photo lineup of six men including David. The other five men had roughly the same appearance as David. D.H. "immediately pointed [to] . . . David David as the person who assaulted her."
>
> David's cousin Alfred Nicolai testified that, around the time of the attack, he had overheard David telling his [David's] brother that he was "scared that the police were looking for him and that [the] woman he raped might have told on him." David later told Nicolai not to tell the police what he had said or he would "beat [Nicolai] up."

*David v. State*, No. A-8548, 2005 WL 662691, at *1-2 (Alaska Ct. App. Mar. 23, 2005).

At the conclusion of the second trial, the jury found David guilty as charged. The trial court found that David was a worst offender and sentenced him to 30 years of imprisonment for the first-degree sexual assault conviction, along with a 1-year concurrent term for the fourth-degree assault conviction.

Through counsel, David appealed his conviction, arguing that: (1) the trial court erred in failing to grant his motion for a mistrial based on defense counsel's mistaken representation, later proved incorrect by the prosecution, that the police failed to timely store the physical evidence; (2) his convictions were not supported by sufficient evidence; and (3) the trial judge was clearly mistaken in sentencing David, after adjudicating him as a worst offender, to the 30-year maximum sentence for first-degree sexual assault. On March 23, 2005, the Court of Appeal unanimously affirmed the judgment against David in a reasoned, unpublished memorandum opinion and judgment. *David*, 2005 WL 662691, at *6. David filed a petition for hearing with the Alaska Supreme Court, asking that court to consider the constitutionality of David's sentence. On July 27, 2005, the Supreme Court denied the petition for hearing.

On December 23, 2005, David filed a *pro se* application for post-conviction review, in which he argued that trial counsel rendered ineffective assistance of counsel by failing to file pretrial motions, challenge the admission of evidence, or investigate and prepare for trial by conducting independent testing of physical evidence. He also argued that his trial and appellate counsel were laboring under a conflict of interest. Of particular relevance to the instant motion, David averred that he was "denied by the State employees to verify his DNA whether his evidence had matched Investigator Sergeant Stonecipher's seized DNA evidence, denied

-3-

Case 3:17-cv-00062-JKS   Document 23   Filed 01/22/19   Page 3 of 9

petitioner's right to any independent testing required by the law." Docket No. 16-1 at 10. In May 2006, David was appointed counsel. After more than three years, various substitutions of counsel, and multiple extension requests, in June 2009, appointed counsel filed notice that David would not be amending the initial application but would instead rely on the original *pro se* application filed in December 2005. Nearly a year later, the State moved to dismiss the application for failure to state a *prima facie case*, and on March 22, 2012, the superior court dismissed the application.

On appeal of the denial of post-conviction relief, David was appointed new counsel who again attacked the effectiveness of trial counsel. On April 29, 2016, the Court of Appeals issued a published opinion, chastising David's attorneys for the "disturbing procedural history of this case," but nonetheless affirming the superior court's determination that David's petition did not set forth a *prima facie* case for relief. *David v. State*, 372 P. 3d 265, 270 (Alaska Ct. App. 2016). On May 31, 2016, the Alaska Supreme Court summarily denied David's petition for hearing.

On March 19, 2017, David filed a *pro se* Petition for a Writ of Habeas Corpus to this Court, the timeliness of which Respondent does not contest. (Docket No. 1). David also asked for the appointment of counsel, (Docket No. 2), which was granted by a previously-assigned district court judge. (Docket No. 4).

While his federal habeas petition was pending, on March 26, 2017, David filed a second *pro se* application for post-conviction relief in the superior court. In that petition, David averred that he had been provided ineffective assistance by trial, appellate, and post-conviction relief counsel and also asked that the court order DNA testing of the evidence underlying his conviction. Specifically, David complained that neither trial or post-conviction relief counsel undertook comparison DNA testing. The superior court initially denied David's request for the appointment of counsel, but after interlocutory review, the Court of Appeals directed that counsel

be appointed to represent David on his request for DNA testing pursuant to A.S. 12.73.010(d).[2] A review of the state court database, Case No. 4BE-17-00110CI, indicates that the case is now awaiting decision on the State's motion to dismiss. As mentioned above, appointed counsel has filed an Amended Petition and the instant motion to stay these proceedings to allow David to exhaust in state court his claim that trial counsel was ineffective for failing to conduct independent testing on the DNA evidence obtained after the crime.

## II. GROUNDS/CLAIMS

In his counseled Petition before this Court, David argues that trial counsel was ineffective for: (1) failing to conduct a constitutionally adequate pretrial investigation and effectively communicate with David prior to trial; and (2) failing to conduct independent DNA and fingerprint testing of the State's evidence. David contends that the second ground for relief is unexhausted and requests to stay these proceedings to allow him an opportunity to exhaust that claim in state court.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

---

[2] That section provides that, "[i]f an applicant is indigent, . . . counsel shall be appointed . . . to represent the applicant." A.S. 12.73.010(d). The Court of Appeals asked the superior court to determine whether counsel should be appointed to represent David on his ineffective assistance claims too. The superior court appointed counsel with respect to David's DNA claim only. It is not clear whether David's *pro se* ineffective assistance claims are still pending, but it does not appear that the superior court has issued an order with respect to those claims.

-5-

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing their own criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

Before bringing a federal habeas petition, David is required to exhaust all of his claims in state court. 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982). A petition that contains both exhausted and unexhausted claims is called "mixed." *Rose*, 455 U.S. at 510. The parties agree that the Petition is mixed, and specifically that David's claim for ineffective assistance of counsel based on trial counsel's failure to seek independent DNA testing is unexhausted. Pursuant to AS 12.73.010, David may bring a claim seeking independent post-conviction DNA testing separate from his general claim for post-conviction relief. AS 12.73.010 (DNA testing claim for post-conviction relief); *cf.* AS 12.72.010 (general post-conviction relief). The instant Petition is subject to the AEDPA one-year statute of limitations. 28 U.S.C. § 2244(d). David now seeks a stay and abeyance in order to preserve the timeliness of his federal habeas petition while he continues to pursue a claim for DNA testing in Superior Court.

Ordinarily, district courts possess discretion to grant or deny motions to stay. *Landis v. No. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its dockets with economy of time and effort for itself, for counsel, and for litigants."). In the context of habeas petitions, this discretion is circumscribed by the AEDPA and *Rhines v. Weber*, 544 U.S. 269 (2005). Pursuant to *Rhines*, a stay and abeyance to permit a petitioner to exhaust his state remedies "should be available only in limited circumstances." *Rhines*, 544 U.S. at 277. The Supreme Court explained that those circumstances include the following: (1) a showing of "good cause for the petitioner's failure to exhaust his claims"; (2) a showing that the unexhausted claims are "not plainly meritless"; and (3) no showing that the "petitioner engage[d] in abusive litigation tactics or intentional delay." *Id.* at 277-78. The *Rhines* Court developed these parameters to limit the stay and abeyance of federal habeas petitions in order to advance the purposes and objectives of the AEDPA, which established the one-year statute of limitations period to encourage finality of state court judgments and streamline federal habeas proceedings.

*Rhines*, 544 U.S. at 276-77.

Although it does not appear that David has intentionally engaged in abusive or dilatory litigation tactics, he has nonetheless failed to demonstrate that his case is one of the "limited circumstances" where such a stay is appropriate. Staying these proceedings would undermine the purposes and objectives of the AEDPA and contradict the Supreme Court's admonition in *Rhines* by allowing David to delay the resolution of his habeas petition and decrease the incentive for all petitioners to exhaust all claims in state court before filing the federal petition. In particular, David filed his second post-conviction relief application (PCRA) containing the claim for DNA testing in March 2017, but he had the opportunity to bring that claim as early as 2010, when the statute was adopted. The Ninth Circuit has explained that the "good cause" element, "turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify th[e] failure" to exhaust his state claim." *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014). David's motion fails to provide any justification, much less "good cause," for his failure to timely bring his claim for post-conviction DNA testing.

Second, David fails to show that his claim for post-conviction DNA testing is potentially meritorious or that it is not plainly meritless. The results of his pending PCRA may or may not provide evidence for his alleged innocence. David's motion fails to show or otherwise explain how the success or failure of his PCRA bears on the instant federal habeas Petition, which does not contain an actual innocence claim. At best, the DNA testing is tangential to his ineffective assistance claim; at worst it is irrelevant to the instant Petition. In similar circumstances, other courts in this Circuit have found that ordering a stay is not appropriate. *Martinez v. CDCR*, No. 12-cv-2273, 2013 WL 4049669 (E.D. Cal. Aug. 7, 2013); *Allen v. Uttecht*, No. 13-cv-0206, 2013 WL 12214380 (E.D. Wash. Oct. 3, 2013). Thus, the pending results of the PCRA with regard to DNA testing cannot be the basis on which to frustrate the objectives of the AEDPA's statute of limitations and delay the resolution of his Petition.

## V. CONCLUSION AND ORDER

David is not entitled to stay these proceedings pursuant to *Rhines*.

**IT IS THEREFORE ORDERED THAT** the motion to stay at Docket No. 11-1 is **DENIED**.

**IT IS FURTHER ORDERED THAT** Petitioner shall have 14 days from the date of this Order to file a Second Amended Petition deleting the unexhausted claim or a notice of voluntary dismissal without prejudice.

Dated: January 22, 2019.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge